# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GURU PROPERTIES, LLC, | § | |
| | § | |
| | § | **CASE NO. 13-40443-btr** |
| | § | **Chapter 11** |
| | § | |
| DEBTOR. | § | |

## FIRST PLAN OF REORGANIZATION DATED
## APRIL 10, 2013

GURU Properties, LLC ("GURU") proposes the following First Plan of Reorganization ("Plan") Dated April 10, 2013 pursuant to Chapter 11 of the United States Bankruptcy Code on behalf of the GURU. The profitability to fund the Plan is based on the amount of money that it will earn. GURU will file periodic financial reports with the Court as required by the Code covering its profitability, projections of cash receipts and disbursements for a reasonable period and a comparison of actual cash receipts and disbursements with projections in prior reports. These reports shall be available on the Court's PACER site at www.txeb.uscourts.gov using GURU's name and/or case number as referenced above. Such information may also be obtained from the Debtor or its counsel.

## TABLE OF CONTENTS

ARTICLE I DEFINITIONS AND USE OF TERMS ........................................................ 3

ARTICLE II CONCEPT OF THE PLAN ............................................................. 6

ARTICLE III GENERAL TERMS AND CONDITIONS........................................................ 7

ARTICLE IV DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ................. 7

ARTICLE V PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS ......... 8

ARTICLE VI MEANS FOR IMPLEMENTATION OF PLAN .......................................... 12

ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES .......................................................................... 12

ARTICLE VIII ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT
OF CLAIMS .......................................................................................... 13

ARTICLE IX EFFECT OF CONFIRMATION ................................................... 13

ARTICLE X MISCELLANEOUS PROVISIONS............................................... 14

ARTICLE XI MODIFICATION OF THE PLAN...................................................... 16

ARTICLE XII RETENTION OF JURISDICTION ............................................. 16

## ARTICLE I
## DEFINITIONS AND USE OF TERMS

**1.01    Defined Terms.** Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

**1.01.01 Administrative Claim or Expense** means an administrative expense or Claim described in Section 503 of the Bankruptcy Code and entitled to administrative priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, Claims for compensation of professionals made pursuant to Sections 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against GURU and its property under 28 U.S.C. Section 1930.

**1.01.02 Administrative Tax Claim** means an Unsecured Claim by any governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

**1.01.03 Allowed Claim** means a Claim against GURU allowable under the Bankruptcy Code to the extent that (i) a proof of Claim, proof of Interest, or request for payment was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order or (iii) a Claim allowed pursuant to this Plan.

**1.01.04 Allowed Secured Claim** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which GURU has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.05 Bankruptcy Code or Code** means the United States Bankruptcy Code, Title 11 of the United States Code Section 101 et seq., as amended.

**1.01.06 Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Texas, or such other court that may have jurisdiction with respect to the reorganization of GURU pursuant to Chapter 11 of the Bankruptcy Code.

**1.01.07 Bankruptcy Rule** means the Federal Rules of Bankruptcy Procedure.

**1.01.08 Bar Date** means subsequent to which a proof of pre-petition Claim may not timely be Filed or the date by which proofs of claims held by governmental agencies must be filed.

**1.01.09 Case** means this Chapter 11 Bankruptcy Case in the Bankruptcy Court.

**1.01.10 Claim** shall have the meaning set forth in Bankruptcy Code Section 101(5).

**1.01.11 Claimant** means any person or entity having or asserting a Claim in the case.

**1.01.12 Class or Classes** mean all of the holders of Claims or Interests that GURU has designated pursuant to Section 1123(a)(1) of the Bankruptcy Code as having substantially similar characteristics as described in Article IV of this Plan.

**1.01.13 Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

**1.01.14 Confirmation Date** means the date on which the Confirmation Order is entered.

**1.01.15 Confirmation Hearing** means the hearing or hearings held before the Bankruptcy Court in which the GURU will seek Confirmation of this Plan.

**1.01.16 Confirmation Order** means the Order of the Court confirming this Plan under Section 1129 of the Bankruptcy Code.

**1.01.17 Contested** when used with respect to a Claim, means a Claim against GURU (a) if no Proof of Claim was filed, a claim that is listed in GURU's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated and that is not allowed pursuant to this Plan; (b) a claim that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) if a Proof of Claim was filed, a claim as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**1.01.18 Creditor** shall have the meaning specified by Section 101(9) of the Code.

**1.01.19 Disputed Claim** means any Claim that is not an Allowed Claim.

**1.01.20 Effective Date** means the first business day that is fourteen days after the Confirmation Date.

**1.01.21 Estate** means the estate created pursuant to Bankruptcy Code Section 541 with respect to GURU.

**1.01.22 Fee Claim** means a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the GURU Chapter 11 case.

**1.01.23 Filed** means delivered to the Clerk of the Bankruptcy Court.

**1.01.24 Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition *for petition for certiorari,* or move for a stay, new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari,* stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court

to which such order was appealed, *certiorari* shall have been denied or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for *certiorari,* or move for a stay, new trial, reargument or rehearing shall have expired; *provided, however,* that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

1.01.25  **GURU** shall mean, prior to the Confirmation Date, GURU, the debtor and debtor-in-possession in the Case, and shall mean, effective upon and after the Confirmation Date, GURU, as it exists as a reorganized debtor governed by the Plan and with the rights, obligations and duties set forth in the Plan.

1.01.26  **General Unsecured Claim** means Unsecured Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code.

1.01.27  **Impaired** means the treatment of an Allowed Claim pursuant to the Plan <u>unless,</u> with respect to such Claim, either (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, GURU (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; (C) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (iii) the Plan provides that on the Effective Date, the holder of such Claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

1.01.28  **Petition Date** means February 19, 2013, the date GURU's petition was filed commencing this bankruptcy case.

1.01.29  **Plan** means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Court.

1.01.30  **Pre-petition** means prior to the Petition Date.

1.01.31  **Priority Tax Claim** means a Claim entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

1.01.32  **Pro Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

1.01.33  **Property of the Estate** means all property in which GURU or its bankruptcy Estate holds a legal or an equitable interest, including all property described in Bankruptcy Code Section 541. GURU shall remain in possession of all property of the Estate unless provided for

otherwise in the Plan or Confirmation Order.

**1.01.34** <u>Rejection Claim</u> means any Claim arising pursuant to Bankruptcy Code Section 502(g) by reason of rejection by GURU of an executory contract or unexpired lease pursuant to Bankruptcy Code Sections 365 or 1123(b)(2).

**1.01.35** <u>Secured Claim</u> means any Claim secured by a lien, security interest, or other charge or interest in property in which GURU or the Estate has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.36** <u>Secured Tax Claim</u> means any Tax Claim which is secured by real or personal property.

**1.01.37** <u>Secured Creditor</u> or <u>Secured Claimant</u> means any Claimant holding a Secured Claim.

**1.01.38** <u>Unimpaired</u> means not Impaired.

**1.01.39** <u>Unsecured Claim</u> means any Claim not collateralized (or the extent not fully collateralized) by assets of GURU.

**1.01.40** <u>Unsecured Claimants</u> or <u>Unsecured Creditors</u> means any holder of an Unsecured Claim.

**1.01.41** <u>Voidable Transfer</u> means all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

**1.02** <u>Number and Gender of Words.</u> Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

**1.03** <u>Terms Defined in the Bankruptcy Code.</u> Capitalized terms not specifically defined in section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

**1.04** <u>Headings.</u> The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**1.05** <u>Time Computation.</u> In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

**ARTICLE II**
**CONCEPT OF THE PLAN**

**2.01** <u>Generally.</u> The Plan is a plan of reorganization. GURU shall continue its business after the Effective Date.  GURU's primary business is owning and operating a 61 room hotel at 1204 North Highway 81, Duncan, Oklahoma. The hotel is currently unbranded. GURU's

business operations will provide the income and means for implementation of this Plan and are set forth in more detail in the accompanying Disclosure Statement.

## ARTICLE III
## GENERAL TERMS AND CONDITIONS

**3.01 Treatment of Claims.** This Plan is intended to resolve all Claims against GURU and/or property of GURU of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive payments afforded by the Plan. The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02 Time for Filing Claims.** The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by GURU, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on GURU and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on GURU' counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by GURU.

## ARTICLE IV
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

GURU designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123. GURU shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or GURU is otherwise released from such obligations by the Court.

**4.01 Class 1** consists of any Allowed Administrative Claims.

**4.02 Class 2** consists of any Allowed Secured Tax Creditor Claims (including ad valorem tax claims).

**4.03 Class 3** consists of any Allowed Priority Creditor Claims (Non-Wage Claims).

**4.04 Class 4** consists of Allowed Priority Wage Claimants.

**4.05 <u>Class 5</u>** consists of Allowed Secured Claim of Excel Bank.

**4.06 <u>Class 6</u>** consists of Allowed Claim of Oklahoma Tax Commission and Oklahoma Employment Commission.

**4.07 <u>Class 7</u>** consists of the Allowed General Unsecured Claims Less Than $2,500.

**4.08 <u>Class 8</u>** consists of Allowed General Unsecured Claims $2,500 or Greater.

**4.09 <u>Class 9</u>** consists of GURU's Equity Interest Holders.

**ARTICLE V**
**<u>PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS</u>**

The Claims and Interests classified in Article IV hereof shall be treated in the manner set forth in this Article V.

**<u>Class 1 Claims</u>**. The Class 1 Claims are estimated to be $25,000. The Allowed amount of Class 1 Claims will be paid once Allowed in full by GURU and on or before the Effective Date. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for GURU's attorney's fees and U.S. Trustee's fees. U.S. Trustee's fees must be paid until the case is closed. GURU must file quarterly reports following confirmation and until the case is closed. The Class 1 Claims may agree to a different treatment which will be set forth in writing.

**<u>Class 2 Claims</u>.** The estimated amount of Class 2 Claims are based on tax years prior to the Petition Date. The claims against Debtor and its property for past due ad valorem taxes for years prior to tax year 2013 shall be paid over 60 months from the Confirmation Date. These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 2 Claims shall be paid interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. In the event that GURU disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. Such default must be cured by GURU within 10 business days of the date of transmission of such notice of default. In the event the default is not cured, the Class 2 Claimants shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Class 2 Claimants shall only be required to provide two notices of default. Upon a third event of default, (i) the Class 2 Claimants shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.

These claims are secured claims.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3 Claims**. The Class 3 Claims will be paid once Allowed over five (5) years from the Effective Date with interest on such amounts at the rate of 3% per annum until paid in full. These claims will be paid in equal monthly payments over 60 months, beginning on the 15th day of the first month after the Effective Date.

The Class 3 Claims are Impaired and the holders of the Class 3 Claims are entitled to vote to accept or reject the Plan.

**Class 4 Claims**. The Class 4 Claims will be paid once Allowed ninety (90) days following the Effective.

The Class 4 Claims are Impaired and the holders of the Class 4 Claims are entitled to vote to accept or reject the Plan.

**Class 5 Claim**. The Allowed Secured Claim of Excel Bank.

a.   The Class 5 Allowed Secured Claim of Excel Bank ("Bank") shall be an Allowed Secured Claim in the amount of $2,000,000.00 (or such amount as determined by the Court). Debtor will pay BANK principal and interest accruing on its Allowed Secured Claim during the course of the Plan. Such payments will be based on a 30 year amortization of the Allowed Secured Claim of BANK at a rate of 4.25% per annum as of the Confirmation Date. Payments to BANK shall be due and payable monthly in equal monthly payments on the tenth (10th) day of the month following the Effective Date (based on a 30 year amortization) and shall continue on the tenth (10th) day of each month thereafter with a balloon payment consisting of all remaining principal, interest and any other amounts then owing due on or before June 1, 2023. Ad valorem taxes for the 2013 tax year shall be paid in full when due. Ad valorem taxes for subsequent years shall be escrowed in a tax escrow account held by BANK or its agent on a monthly basis starting on the first applicable payment date to BANK under this Plan and shall be paid by the Debtor in addition to the mortgage payment (and due on the same day as the mortgage payment) at the rate of 1/12 per month of the estimated ad valorem tax on a yearly basis. The tax escrow payments shall be calculated based on the actual applicable tax rate and valuations as applied by the applicable tax authorities at the time of such payments. A requirement for the escrow of insurance shall only apply if such insurance has not been previously procured by the Debtor. Upon providing proof of such insurance the Debtor shall not be required to escrow for same.

b.   BANK shall have an Allowed Secured Claim as set forth above and shall maintain and have a first lien position on all of the real property, improvements and personal property of the Debtor (the "Collateral") as provided within its loan documents with BANK (the "Loan Documents") save and except any amounts owed to Taxing Authorities for ad valorem taxes. BANK shall retain all liens until it is paid in full.

c.   The security interest and liens granted to and deed provided to BANK under the Plan and Confirmation Order shall constitute valid and duly perfected security

interests and liens, and either the Confirmation Order or the Plan shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests and liens upon the collateral granted to BANK hereunder, and BANK shall not be required to file, record or serve any financing statements, mortgages, notice or other documents which may otherwise be required under federal or state law in any jurisdiction or to take any other action (including the taking of possession) to validate or perfect such post-petition security interest and liens. If BANK shall, in its discretion, elect for any reason to file any such financing statements, mortgages, notices or other documents with respect to such security interests and liens, or take any other action to evidence or perfect same, the Debtor is authorized and required to, or cause to be executed, all such financing statements, deeds of trust, notices or other documents upon BANK's request. BANK may, in its discretion, file a copy of either the Order Confirming Plan, the Plan and/or any other instruments reflecting the terms of its agreements with the Debtor in any filing or recording office in any jurisdiction in which the Debtor may have an interest in property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of either the Order Confirming Plan or the Plan in accordance with applicable law.

d.  The unmodified terms of the BANK pre-Petition Date loan documents are not modified by the Plan or Confirmation Order unless specifically stated in the Plan. If requested by BANK, Debtor shall execute all necessary loan and related documents with the terms stated in this Plan including any modifications and standstill agreements.

e.  The Reorganized Debtor shall execute and deliver to BANK any and all documents reasonably necessary to effect its assumption of the loan by BANK and the terms and agreements between BANK and the reorganized Debtor pursuant to this Plan, including but not limited to a Reinstatement, Modification and Assumption Agreement. Notwithstanding any provisions to the contrary in the Debtor's Plan, the Disclosure Statement or any orders approving the Debtor's Plan and/or the Disclosure Statement, BANK shall retain its priority liens in and against all of the Debtor's real and personal property.

f.  The Class 5 Claim is Impaired and the holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

**Class 6 Claims.** The Class 6 Claims will be paid once Allowed with interest after the Effective Date at the rate prescribed by applicable non-bankruptcy law, pursuant to Bankruptcy Code Sec. 511. Payments shall be made in equal monthly installments beginning on the first day of the month following the Effective Date and continuing on the first day of each month thereafter. Payments shall be in an amount sufficient to amortize priority tax claims over a period beginning on the Effective Date and ending five (5) years from the petition date. Nothing in this Plan shall effect the setoff rights held by the Texas State Comptroller and the Texas Workforce Commission.

The Class 6 Claims are Impaired and the holder of a Class 6 Claim is entitled to vote to

accept or reject the Plan.

**Class 7 Claims.** The Class 7 Claims will be paid once Allowed 10% of their Allowed Claims over sixty (60) days. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid as called for by this Plan. This is an administrative convenience class.

The Class 7 Claims are Impaired and the holder of a Class 7 Claim is entitled to vote to accept or reject the Plan.

**Class 8 Claims.** The Class 8 Claims will be paid once Allowed 5% of their Allowed Claims over 60 months. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid as called for by this Plan.

The Class 8 Claims are Impaired and the holder of a Class 8 Claim is entitled to vote to accept or reject the Plan.

**Class 9 - Equity Interests.** On the Confirmation Date, all Equity Interests shall be retained. However, if the unsecured creditors vote against the Plan then:

In the interest of ensuring the Plan provides the greatest benefit to the Debtor's creditors and equity interest holders, all interested parties shall have the opportunity to purchase the reorganized Debtor's interests at the Confirmation hearing pursuant to the following auction procedures:

a.  Any party interested in bidding to acquire the reorganized Debtor's equity interests must provide notice to the Debtor three (3) business days prior to the Confirmation hearing and attend the Confirmation hearing and advise the Bankruptcy Court at the commencement of the hearing of the party's interest in participating in an auction of the equity interest, at which point the Bankruptcy Court may direct that an auction be conducted prior to the continuation of the Confirmation hearing.

b.  Any party submitting a bid at the auction must have proof of funds to pay the party's bid at the auction and actually deposit the funds with the Debtor within 48 hours of the announcement of the winning bid.

c.  The opening bid at any auction shall be by Jag Dhillon in the amount of the Equity Investment (i.e., $25,000). The $25,000.00 was arrived at by analyzing the current value of this business given the fact that the business currently has no equity in its assets.

d.  Each subsequent bids shall be in increments of at least $1,000 greater that the previous bid.

e.  The reorganized Debtor's equity interest shall be sold to the bidder submitting the highest non-contingent cash offer for the Debtor's equity interest.

f.  The prevailing party at the auction must assume all of the obligations of the Debtor under the Plan.

g.  If the winning bidder at the auction fails to close on such purchase as set forth above, the party submitting the next highest bid shall be deemed the winning bidder.

h.  The funds from such auction sale shall be deposited into the account of the Debtor and used to fund the Plan including the payment of administrative claims.

i.  The Debtor shall solicit such bids by noticing the Plan out to creditors in this Case.

j.  If the Plan is not confirmed by the Court at the Confirmation Hearing, then the auction of the equity interests shall not proceed and the auction shall be cancelled. Debtor can take higher cash offers for the purchase of the equity interests in the Reorganized Debtor at the time of the Hearing on Confirmation.

The Equity Interest holders are Impaired under the Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF PLAN

**6.01** Implementation of Plan; Vesting This Plan will be implemented, pursuant to Section 1123(a)(5) of the Code, by the commencement of payments as called for in the Plan. Projections for this Plan are attached to the Disclosure Statement and incorporated herein by this reference as if set forth in full for all purposes.

Upon the Effective Date, all property of GURU and its Estate shall vest in GURU, subject to the Allowed Secured Claims in this Plan.

The funds necessary for the satisfaction of the creditors' claims shall be generated from GURU's income and the auction proceeds.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01 Rejection of Executory Contracts and Unexpired Leases**. GURU may assume, pursuant to Bankruptcy Code Section 1123(b)(2), by separate Motions unexpired leases of non-residential real property and executory contracts prior to the Confirmation Date.

**7.02 Bar Date for Claims Based on Rejection**. If the rejection of an executory contract or an unexpired lease by GURU results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against GURU or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon GURU, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim;

*provided, however,* that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by GURU that such rejection gives rise to or results in a Claim or shall be deemed a waiver by GURU of any objections to such Claim if asserted.

## ARTICLE VIII
## ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS

**8.01 GURU's Causes of Action**. Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of GURU or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by GURU for the benefit of the Creditors subsequent to the Effective Date. Nothing in this Plan shall act as a bar as it relates to any claims of GURU against third parties, except as expressly released pursuant to the Plan. Nothing in this Plan or the confirmation of the Plan shall estop the Debtor from asserting claims against third parties.

Objections to Claims. Any party authorized by the Bankruptcy Code may object to the allowance of Pre-petition Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however,* that GURU may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because GURU asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of *such offset or* recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at anytime, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE IX
## EFFECT OF CONFIRMATION

**9.01 Discharge and Release of GURU.** Except as provided in the Plan, pursuant to Bankruptcy Code Section 1141(d), confirmation of this Plan does discharge GURU.

**9.02 Legal Binding Effect.** The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind GURU and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.03 Discharge** shall result in the inability to commence or continue any judicial, administrative, or other action or proceeding on account of any Pre-Petition Date Claims against GURU.

Except as provided in the Plan, from and after the Confirmation Date, all holders of Claims against GURU are restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against GURU, or its property; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or GURU on account of such Claims; c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or GURU on account of such Claims; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the GURU on account of such Claims; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan on account of such Claims; *provided, however,* that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce its rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. Such restraint shall be consistent with the discharge granted to GURU in connection with confirming its Plan as called for by the Code.

**ARTICLE X**
**MISCELLANEOUS PROVISIONS**

**10.01 Request for Relief Under Bankruptcy Code Section 1129.** In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), GURU reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02 Revocation.** GURU reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**10.03 Effect of Withdrawal or Revocation.** If GURU revokes or withdraws this Plan prior to the Confirmation Date, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against GURU or any other person or to prejudice in any manner the rights of GURU or any person in any further proceedings involving GURU.

**10.04 Due Authorization by Creditors.** Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against GURU the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05 Entire AGurueement.** This Plan, as described herein, the Confirmation Order and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06 Section 1146 Exemption.** Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07 Provisions Governing Distributions.** All payments and distributions under the Plan shall be made by GURU as indicated. Any payments or distributions to be made by GURU pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court. Any payment or distribution by GURU pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by GURU pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed). All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of GURU and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by GURU in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made directly to GURU by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to GURU.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08 Governing Law.** Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Oklahoma shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**10.09 Default.** If GURU fails to satisfy any of the obligations under this Plan and such default is not cured within 30 business days of the date of transmission of notice of the default to

GURU, then the defaulted party may pursue all of its remedies outside of the Bankruptcy Court, including, but not limited to, foreclosure on its lien(s) on property. For purposes of this provision, notice shall be provided to GURU, c/o Joyce Lindauer, Esq. at (972) 503-4034.

## ARTICLE XI
## MODIFICATION OF THE PLAN

**11.01** GURU may propose amendments or modifications of the Plan at any time prior to Confirmation, upon notice to all parties-in-interest. After Confirmation, GURU may, with approval of the Court, and so long as it does not materially or adversely affect the interest of creditors, to remedy any defect or omission or reconcile any inconsistencies in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**12.01** <u>Allowance of Claims</u>. To hear and determine the allowability of all Claims upon objections to such Claims.

**12.02** <u>Executory Contracts and Unexpired Leases Proceedings</u>. To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of GURU pursuant to Sections 365 and 1123 of the Code and Article VII of the Plan.

**12.03** <u>Plan Interpretation</u>. To resolve controversies and disputes regarding the interpretation of the Plan.

**12.04** <u>Plan Implementation</u>. To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**12.05** <u>Plan Modification</u>. To modify the Plan pursuant to § 1127 of the Code and applicable Bankruptcy Rules, except that no modification shall be made to the Plan that would impair, diminish or affect in any way the rights of participants of any Classes of the Plan without the consent of such Class.

**12.06** <u>Adjudication of Controversies</u>. To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against GURU.

**12.07** <u>Injunctive Relief</u>. To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

**12.08** <u>Interpleader Action</u>. To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**12.09** <u>Correct Minor Defects</u>. To correct any defect, cure any omission or reconcile any

inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**12.10 Authorization of Fees and Expenses.** To review and authorize payment of professional fees incurred prior to the Effective Date.

**12.11 Post-Confirmation Orders Regarding Confirmation.** To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

**12.12 Final Decree.** To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

Submitted By:

By: /s/ Joyce Lindauer
**Joyce Lindauer**
**Attorney at Law**
**Texas Bar No. 21555700**
**8140 Walnut Hill Lane**
**Suite 301**
**Dallas, TX 75231**
**Tel: (972) 503-4033**
**Fax: (972) 503-4034**
**COUNSEL FOR GURU PROPERTIES, LLC**

/s/ Jag Dhillon
**for GURU PROPERTIES, LLC**